UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROBERT PAYNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| HARTFORD LIFE AND ACCIDENT | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Robert Payne, and for his claims and causes of action against Defendant, Hartford Life and Accident Insurance Company, states as follows:

### PARTIES

1. Robert Payne ("Payne") is a resident and citizen of the State of Kansas.

2. Defendant The Hartford Life and Accident Insurance Company ("Hartford") is an out-of-state insurance company authorized to do business in the State of Kansas. The Commissioner of the Kansas Department of Insurance is authorized to accept service of process on behalf of Hartford.

### JURISDICTION AND VENUE

3. Payne brings his claim pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

1

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the District of Kansas under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

9. Trial is to be held in Kansas City, Kansas.

## STATEMENTS OF FACT

10. Payne worked as General Maintenance for CoreCivic ("Core"). The duties of his occupation included:

    a. Providing maintenance services to the physical and mechanical operations of the Leavenworth Detention Center in Leavenworth, KS;

    b. Receiving a wide variety of "work orders" from a supervisor and then addressing that order as necessary;

    c. Engaging in work which required carrying his tools in a 30-40lbs backpack throughout the day;

    d. Engaging in work which required constant or frequent bending, stooping, crawling, twisting, climbing, kneeling, lifting, and carrying; and

    e. Averaging, during a regular day, 10 miles of walking per shift.

11. During his employment with Core, Payne became unable to perform the material duties of his job due to degenerative lumbar disc disease with traumatically induced

exacerbation, spondylosis, facet arthroplasty, degenerative cervical disc disease, and neuropathy of the upper and lower extremities.

12. On January 5, 2022, while Payne was still employed with Core, Payne suffered two successive falls on an icy surface. These falls resulted in excruciating back pain and loss of mobility. Due to his pain, Payne was unable to work the week following his falls. Payne attempted to return to work on Monday, January 10, 2022. He struggled with his job duties and was in constant pain.

13. January 17, 2022 was Martin Luther King holiday, and Payne was not required to report to work that day. On January 18, 2022, he did not feel physically capable of working and called in sick. Payne made yet another effort to return to work on January 19, 2022 but was unable to complete a full shift. On that date, he advised his supervisor that he could not perform his job duties and left early. Payne remained employed with Core until February 7, 2022.

14. Core sponsored a group short-term disability ("STD") and long-term disability ("LTD") benefits plan ("Plan") for its participating employees.

15. The Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002(1).

16. The Plan offered disability benefits to qualifying Core's employee Plan participants.

17. At all relevant times, Payne has been a participant and covered person under the terms of the Plan.

18. Hartford is the current administrator of the Plan.

19. Core delegated or attempted to delegate the function of issuing STD and LTD claim determinations to Hartford.

20. Core and Hartford entered into an administrative services contract through which Core paid Hartford for acting as claims administrator.

21. Payne applied for STD and LTD benefits with Hartford, supplying it with completed claim forms, authorizations, and other information sufficient to provide adequate proof of loss;

22. Hartford denied Payne's STD claim on June 15, 2021.

23. Hartford denied Payne's LTD claim on November 15, 2021.

24. On February 17, 2022, Payne requested a copy of his claim files from Hartford and specifically requested that Hartford produce, among other things, "all documents relied upon" by Hartford in denying Payne's claims, including a complete copy of the insurance policies.

25. While Hartford produced documents purporting to be Payne's STD and LTD claim files, it did not produce a copy of the applicable STD or LTD policies. Hartford's letters denying Payne's claims specifically refer to portions of those policies and indicate Hartford relied on the policies when it decided his claims.

26. Hartford's failure to produce the policies it says it relied upon represents a significant procedural irregularity and has prejudiced Payne's rights under ERISA.

27. The Pre-existing Condition Limitation is believed to be defined by the policy as:

> "**Pre-existing Condition Limitation:** *Are benefits limited for Pre-existing Conditions?*
> We will not pay any benefit, or any increase in benefits, under The Participating Employer's coverage under The Policy for any Disability that results from, or is caused or contributed to by, a Pre-existing Condition, unless, at the time You become Disabled:
> 1) You have not received Medical Care for the condition for 3 consecutive month(s) while insured under The Participating Employer's coverage under The Policy; or
> 2) You have been continuously insured under The Participating Employer's coverage under The Policy for 12 consecutive month(s).
>
> **Pre-existing Condition** means:
> 1) any accidental bodily injury, sickness, Mental Illness, pregnancy, or episode of Substance Abuse; or
> 2) any manifestations, symptoms, findings, or aggravations related to or resulting from such accidental bodily injury, sickness, Mental Illness, pregnancy, or Substance Abuse; for which You received Medical Care during the 3 consecutive month(s) period that ends the day before:
> 1) Your effective date of coverage; or
> 2) the effective date of a Change in Coverage.

Benefit Management Services
Minneapolis Disability Claim Offi

28. Hartford's November 15, 2021, denial set forth the Pre-existing Condition Limitation found in the policy, but it did not include all policy language with regard to the limitation.

29. In its denial letter, Hartford communicated very little in a short confusing letter. Hartford did not include a copy of the STD policy. In its denial, Hartford asserts that the effective date of the policy was January 1, 2021. This conflicts with its separate determination that Payne's effective date of coverage was July 7, 2020.

30. Furthermore, the denial letter's identification of Payne's last day working is in error. As noted above, his last day physically working at Core was on January 19, 2022, and Payne continued to be employed until February 7, 2022. At the time he became finally unable to perform his job duties, Payne had been employed with Core for almost 22 months, and the policy had been in effect for 21 months.

31. Hartford denied Payne's LTD claim for one reason – it contended that Payne's claim was excluded by the Pre-Existing Condition Limitation. It determined that his LTD coverage became effective on August 1, 2020, and that Payne's date of disability was June 8, 2021. However, as noted above, those dates are incorrect.

32. Payne became disabled on January 20, 2022, when after falling on ice, he injured his back such that he could no longer work. Assuming the effective coverage date was August 1, 2020, Payne became disabled more than 12 months from the effective coverage date, and the Pre-Existing Condition Limitation does not bar his claim for benefits.

33. The language that defines "disability" from the policy is believed to be:

> **Test of Disability** (GR-9N 06-010 02-NJ)
> From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:
>
> - You cannot perform the **material duties** of your **own occupation** solely because of an **illness**, **injury** or disabling pregnancy-related condition; and
> - Your work earnings are 80% or less of your **adjusted predisability earnings**.
>
> **After the first 24 months of your disability** that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any **reasonable occupation** solely because of an **illness**, **injury** or disabling pregnancy-related condition.

34. "Material Duties" is believed to be defined as:

> Duties that:
>
> - Are normally needed for the performance of your **own occupation**; and
> - Cannot be reasonably left out or changed. However, to be at work more than 40 hours per week is not a material duty.

35. "Reasonable Occupation" is believed to be defined as:

> This is any gainful activity:
>
> - For which you are, or may reasonably become, fitted by education, training, or experience; and
> - Which results in, or can be expected to result in, an income of more than 60% of your **adjusted predisability earnings**.

36. Payne, at all relevant times, met the terms of "disabled" as defined by the policies.

37. Hartford is in possession of hundreds of medical records including opinions of Payne's health care professionals that explicitly state he is unable to perform the duties of his occupation.

38. Payne struggled despite these underlying conditions and continued to attempt to work. However, his falls in January 2022 represented new events and caused new conditions to develop thus aggravating his existing back impairments and which, by definition, could

not be "pre-existing conditions" because they arose after the policies' effective dates. Payne's conditions are incompatible with medium work, and Payne is disabled.

39. Payne was unable to perform the material duties of his occupation because of disability.

40. Payne is unable to perform the material duties of any occupation.

41. Payne, has at all relevant times, met the policies definition of "disability" under the Plan and is entitled to benefits.

42. Payne submitted timely written appeals of Hartford's denials of his STD and LTD claims on April 25, 2022.

43. Hartford refused to reconsider its denials and issued a final denial on August 9, 2022.

44. Payne has exhausted his administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

45. Payne realleges the preceding paragraphs as if fully set forth herein.

46. Payne is entitled to all unpaid and accrued LTD benefits, as Hartford:

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to properly consider Payne's medical impairments and resulting limitations; and

    c. Issued an unfavorable decision that was arbitrary and capricious.

47. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Payne is entitled to an award of actual damages for losses suffered.

48. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

49. Hartford has not satisfied its obligation to pay Payne's STD and LTD benefits.

50. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Payne prays for judgment against Hartford for unpaid STD and LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

51. Payne realleges the preceding paragraphs as if fully set forth herein.

52. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

    "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

53. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

    "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

54. Hartford, the Plan's designated claims administrator, is a fiduciary.

55. Payne participated in and benefitted from the Plan as previously indicated.

56. Hartford's claims management practices are motivated by financial incentives in its administrative services agreement with Core.

57. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Hartford operates under an inherent conflict of interest.

58. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

59. Hartford breached its fiduciary duty in:

   a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations;

   b. Hartford denied Payne's appeal for STD and LTD benefits based on the Pre-existing Condition Limitation when it is inapplicable;

   c. Failing to properly administer the claim;

   d. Failing to properly disclose the financial relationship between itself and IME providers;

   e. Failing to disclose the agency relationship between IME providers as sub-agents; the compensation provided to doctors or nurses with a report determination of 'not disabled' versus the compensation received for a determination of 'disabled';

   f. Failing to disclose all implicit and explicit duties IME providers hold with their principal, Hartford. Failing to adequately explain all unstated and secret duties that the IME providers provide to their principal, Hartford, to beneficiaries.

   g. Violating the duty of good faith by failing to even attempt to administer the disability claim genuinely and honestly;

   h. Failing to investigate the merits of the STD and LTD claims thereby causing Payne hardship.

   i. Engaging in an inherent structural conflict of interest by assuming the role of both claims administrator and payor of benefits;

   j. Failing to properly consider objective medical evidence of disability, and/or

       failing to specifically explain why it did not agree with such clear and concise evidence of disability; and

   k. Failing to produce to Payne a full and complete copy of his claim file.

60. Hartford denied Payne's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

61. Hartford failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Payne and the Plan's participants and beneficiaries generally.

62. Hartford's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

63. Hartford's violations of regulations alone allow Payne the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

64. Hartford's violations of federal regulation also subject its decision to *de novo* review.

65. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Payne prays for an order that Hartford retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Hartford in its fiduciary capacity; for an equitable accounting of benefits that Hartford has withheld; for the disgorgement of profits enjoyed by Hartford in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

                        Respectfully submitted,

BURNETTDRISKILL, Attorneys

By: /s/ Derrick A. Pearce
Derrick A. Pearce, Mo. # 16752
Kyle H. Sciolaro, Mo. # 64568
103 W 26th Ave., Ste. 290
North Kansas City, MO  64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF